**In the Interest of A.R.S., A Child.**

**N.S., Appellant.**

**No. 90–1399.**

Supreme Court of Iowa.

Feb. 19, 1992.

John J. Gajdel of Watson and Gajdel, Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., John M. Parmeter, Sp. Asst. Atty. Gen., and Kathrine S. Miller–Todd, Asst. Atty. Gen., for appellee.

J. Michael Mayer, Des Moines, guardian ad litem.

Considered by LARSON, P.J., and SCHULTZ, CARTER, NEUMAN, and SNELL, JJ.

LARSON, Justice.

This case involves the termination of the parent-child relationship of two-year-old Ashley and her mother, N.S. The court of appeals reversed the termination, on ineffective-assistance-of-counsel grounds (by an attorney not involved in the appeal), and remanded for further findings. On the application by the State and guardian ad litem, we granted further review. We vacate the court of appeals decision and affirm the district court.

I. *The Facts.*

Ashley was born on February 27, 1990. She was immediately adjudicated to be a child in need of assistance (CINA) under Iowa Code section 232.2(6)(c)(2) (1989) because of the mother's prior abuse and neglect of her older children. Ashley was placed in the custody of the department of human services, but she was later returned to her mother under the supervision of the department. Mindful of the mother's history of sexual abuse, her abuse of alcohol and drugs, and her general lack of parenting skills, the juvenile court ordered the assistance of a "Home Care Plus Protective Homemaker" agency, a visiting nurse association, a protective payee, a parent/infant nurturing center, and child protective services of the department of human services. In addition, the court ordered the mother to attend Alcoholics Anonymous on a weekly basis, to attend sex abuse therapy at Broadlawns Hospital, and to submit to random drug urinalysis. She was ordered to have no further contact with Ashley's putative father or any other of the mother's friends who had been identified as sex offenders. (Ashley's father is not involved in this appeal.)

Two months later it appeared that the mother's care had not substantially improved, and Ashley was again removed. The juvenile court was advised that the mother had continued to associate with known sex and physical abusers and had relapsed into alcohol abuse.

The State's termination petition alleged grounds under Iowa Code section 232.-116(1)(c) (1989) (as amended 1989 Iowa Acts ch. 229, § 8), which provides for termination if the court finds that both of the following have occurred:

(1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.

(2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

The court found the requirements for termination to be met: (1) the mother's four older children had been adjudicated to be children in need of assistance; and (2) intervention of the various services, ordered by the court, had been unsuccessful. The problems underlying Ashley's CINA adjudication persisted, and the court ordered termination.

There is substantial evidence supporting the termination order. This mother's involvement with the juvenile court system goes back to 1980, when her oldest son was adjudicated to be a child in need of assistance. In 1987, all three of her sons were adjudged to be children in need of assistance, based largely on evidence of sex abuse by the mother's boyfriends. In 1987, the juvenile court files on the boys were closed because the mother was apparently cooperating. However, in October 1987, new CINA petitions were filed, alleging that she was again allowing sex abusers to have contact with her sons. Physical examination of one son showed chronic, long-term anal assault.

In November 1987, all four boys were adjudged to be children in need of assistance (a fourth child had been born in May 1987). The boys were placed in foster care, and the mother was ordered to complete alcohol abuse and sex abuse counseling.

She was ordered to have no contact with three known abusers.

In June 1988, the mother was named as a perpetrator of sex abuse on her boys at a time when they had been in sex abuse counseling for twelve weeks. The boys also identified three of the mother's friends, known sex abusers, as having sexually abused them. These persons included two of the children's natural fathers. At a permanency hearing in December 1988, the court expressed concern that known sex abusers still were in contact with the mother, and it ordered the children to stay in foster care.

One of the mother's sons had been adjudicated to be a child in need of assistance three times. In May 1988, after twenty-three founded referrals were received concerning the children, a petition to terminate was filed. The problems noted were: (1) sex abuse by the mother, (2) physical and sexual abuse by others, (3) alcohol dependency of the mother, and (4) miscellaneous problems in determining appropriate care for her children. At the termination hearing, the mother testified that she wanted to voluntarily terminate her relationship with the four boys, and the court so ordered. In less than a year, Ashley was born.

In May 1990, when Ashley was less than three months old, the mother was encouraged to enter House of Mercy, an alcohol counseling agency. She refused. The same month, she resumed serious drinking. She admitted she abused alcohol and drugs and had done so continuously since Ashley's birth. She testified that she even took Ashley to a doctor while she was "high" on alcohol or drugs. On one occasion, she left Ashley unattended in a truck while she attended a drinking party.

The mother admitted that she had taken approximately $700 per month from the funds of an adult left in her care and that she spent most of it on alcohol. She was investigated for adult abuse by denying critical care, and the adult was removed.

From June 6 to June 27, 1990, the mother participated in chemical dependency treatment because she had violated terms of her probation by using mood-altering chemicals. She failed to complete the assignments in connection with this counseling, and she was discharged without benefit from treatment. On June 29, she entered the House of Mercy for counseling but was expelled on July 25.

One of the mother's substance abuse counselors summarized his impressions:

> [S]he has had a record of treatment failures. She has in my opinion failed yet again, in spite of intense intervention by DHS and other service providers. I conclude that [she] is extremely resistant to treatment in out-patient settings and needs continued in-patient treatment for alcohol dependence and co-dependence. She has had the opportunity to rear children, but demonstrated a willingness to endanger her child directly and indirectly again and again. *I recommend [she] not be allowed to be in a care giving situation to anyone again.*

(Emphasis added.) At Ashley's termination hearing, the mother testified that "half a dozen" or more people had lived with her since Ashley was born and that, in violation of the court's order, known sex abusers were in frequent contact. The mother admitted excessive drinking and admitted that she had physically threatened service workers.

## II. *The Legal Principles.*

■ The termination of a parent-child relationship requires clear and convincing evidence. We have said that the statutory termination procedure is preventative as well as remedial, and these procedures are designed to prevent probable harm to a child before harm actually occurs. *In re A.M.S.*, 419 N.W.2d 723, 726 (Iowa 1988); *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981). In attempting to avoid harm to a child, a court may make reasonable predictions about a parent's future performance by looking to her past. *See id.*

Our review in termination cases is de novo, but we give weight to the findings of the juvenile court—especially regarding credibility of witnesses. The critical question, of course, is the best interests of the child. *Id.*

We agree with the district court that clear and convincing evidence supports the termination. Both requirements of section 232.116(1)(c) (as amended) were satisfied: (1) older children of the mother had been adjudicated to be children in need of assistance, and (2) court-ordered services to correct the circumstances that led to Ashley's CINA adjudication had been ineffective. Because we hold that the termination was proper under this section, we need not decide whether there were also sufficient grounds under section 232.116(1)(h), as alleged in the alternative in the termination petition.

III. *The Ineffective–Assistance–of–Counsel Claim.*

■ The primary issue in this appeal is not the sufficiency of the evidence to support the termination. The narrow issue is whether the mother's lawyer was ineffective in failing to request a continuance of the termination hearing in order to permit her to complete her alcohol counseling. The court of appeals concluded that the lawyer was ineffective and remanded for further proceedings.

■ The test for ineffective assistance of counsel in termination cases is generally the same as in criminal proceedings. *In re D.W.*, 385 N.W.2d 570, 579 (Iowa 1986). *But see In re J.P.B.*, 419 N.W.2d 387, 392 (Iowa 1988) (rules not identical when ineffective assistance claim based on attorney's dual representation of juveniles). In order to establish an ineffective assistance claim, it must be shown that (1) counsel's performance is deficient, and (2) actual prejudice resulted. *D.W.*, 385 N.W.2d at 580; *Hall v. State*, 360 N.W.2d 836, 838 (Iowa 1985); *State v. Neal*, 353 N.W.2d 83, 86–87 (Iowa 1984). *See Strickland v. Washington*, 466 U.S. 668, 687–98, 104 S.Ct. 2052, 2064–70, 80 L.Ed.2d 674, 693–700 (1984). We presume that counsel's conduct falls within the range of reasonable professional competency. *D.W.*, 385 N.W.2d at 580. The burden of proving ineffectiveness is on the claimant. *J.P.B.*, 419 N.W.2d at 392.

Regarding the first element, the deficiency of counsel's performance, the mother's trial attorney testified that she did not move for a continuance because she did not believe it would be granted. The juvenile referee who conducted the hearing on remand, and who was the original judge at the termination hearing, supported that conclusion. The court stated, in its order on remand, that "there was no ground available for continuance." The court also made it clear that its strict adherence to our time standards would make the continuance unlikely. The court concluded that "the overriding interest of the child would not be adequately protected if the Court were to ignore a long history of parental failure and grant a continuance in the middle of trial." The mother, based on this record, has failed to establish deficiencies in the performance of her trial counsel.

She has also failed to establish actual prejudice. As the court noted in its termination order, services offered to this mother since 1979 have included: child protective treatment services, aid to dependent families, protective payee assistance, protective homemaker assistance, public health nursing, intrafamily sexual abuse counseling, individual abuse therapy, parent growth patterns classes, preschool handicapped services, outpatient alcohol treatment, Powell III substance abuse treatment, Broadlawns Hospital alcohol evaluations, evaluations by the National Counsel on Alcohol, Oakdale substance abuse treatment, MECCA substance abuse treatment, Harold Hughes Aftercare treatment, Alcoholics Anonymous, Parent/Infant Nurturing Center services, and foster care.

Although there have been many attempts to provide counseling and rehabilitation to this mother, she has either refused to participate or has failed to benefit from them. There is no reasonable basis to believe that her last attempt would have been any more successful.

We have considered other grounds asserted by the mother on appeal and find no merit in any of them. We agree with the juvenile court that "Ashley should not have to wait for the unlikely event of her moth-

er's rehabilitation and should be freed for adoption."

We vacate the court of appeals decision and affirm the judgment of the district court.

DECISION OF THE COURT OF APPEALS VACATED; JUDGMENT OF THE DISTRICT COURT AFFIRMED.