## IN THE COURT OF APPEALS OF IOWA

No. 18-0380
Filed May 16, 2018

**IN THE INTEREST OF K.C.,**
**Minor Child,**

**E.C., Mother,**
    Appellant.

---

Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin, District Associate Judge.

A mother appeals the juvenile court's termination of her parental rights. **AFFIRMED.**

Elizabeth A. Ryan of Benzoni Law Office, P.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

ConGarry D. Williams of Juvenile Public Defender Office, Des Moines, guardian ad litem for minor child.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**MULLINS, Judge.**

A mother appeals a juvenile court order terminating her parental rights to her minor child, K.C. She contends the State failed to prove the statutory grounds for termination by clear and convincing evidence and to make reasonable efforts to reunify her with her child. She also claims the court erred in failing to apply a statutory exception to termination. She further claims counsel was ineffective for failing to raise the lack-of-reasonable-efforts claim prior to or during the termination hearing.

**I.      Background Facts and Proceedings**

K.C. was born in December 2016 and came to the attention of the Iowa Department of Human Services (DHS) three weeks later upon allegations the mother was denying K.C. critical care. The mother failed to take the child to a routine weight-check appointment after discharge from the hospital. Three weeks after K.C.'s birth, the mother took the child to the doctor for stomach-related issues. During this appointment, the mother admitted to feeding K.C. adult lactate milk and prune juice. The mother was resistant to the doctor's advice that feeding a newborn inappropriate substances was dangerous. The mother also denied the offer of visiting nursing services due to her house being "too messy." It was also noted by medical staff that, despite the outside temperature of fourteen degrees Fahrenheit, K.C. was only dressed in a onesie with no other layers and with only a thin blanket over the car seat. The mother also admitted during the appointment that she felt she was not able to take care of the child while working and she reported she was waiting for a bus ticket to send the child to her brother in Kansas City.

DHS commenced its investigation of the allegations of denial of critical care (failure to provide adequate shelter and failure to provide proper supervision) after receiving a report on January 5, 2017. On January 6, a DHS worker went to the mother's identified address. During this encounter the worker noted the mother was holding the child in an unsafe manner. Though she initially acknowledged her identity, after the DHS worker explained his/her concerns and asked for identification to ensure he/she was speaking with K.C.'s mother, the mother closed the door and refused to open it.

DHS contacted the Des Moines Police Department to assist, as the child's safety had not yet been verified. Due to the medical concerns of the child and the mother's refusal to engage in the assessment process, an emergency removal order was granted and police obtained entry into the house. During the ensuing interview, the mother made statements about being poisoned in jail and claimed "they" were after her, "they" wanted to take her child away from her, and "they" pointed an AK-47 at her while she was in Kansas City.

DHS reported the child was not clean, had a strong body odor, and had severe cradle cap. K.C. slept in the same bed with her mother, which was soiled and had no bedding. In the mother's home, DHS observed that the floor was littered with trash and debris; the furnace had no cover; spoiled food and trash were located on the table, floor, and in the sink; there were bugs in the air; ceiling tiles, which could contain asbestos, were exposed; and there were gaping holes in the floorboards. The mother lived with K.C.'s maternal grandmother, whose parental rights to K.C.'s mother were terminated when she was a child and who

had medical and mental-health issues of her own. K.C. was reportedly left in her grandmother's care on occasion.

K.C. was subsequently removed from her mother's care and placed into foster care. During further investigation, the mother made additional statements that she was poisoned while in jail and that this was likely the reason for K.C.'s stomach issues. She also refused assistance for shelter referrals. On February 3, DHS completed its investigation and determined both allegations of denial of critical care were founded. The child-abuse-assessment report noted concerns about the mother's mental health, including her display of signs of paranoia and possible hallucinations.

On February 17, K.C. was adjudicated to be a child in need of assistance (CINA) and remained in the custody of DHS for foster-care placement. On April 21, the court adopted a case permanency plan which provided for a primary permanency goal of reunification. The permanency plan called for the mother to address her mental-health issues, complete a psychiatric evaluation, continue in individual therapy, engage in parenting sessions, follow recommendations of medical providers, and obtain safe and appropriate housing.

The mother completed a psychiatric evaluation on April 20 and attended a follow-up appointment in July; however, after her diagnosis of unspecified psychosis and a recommendation for medication, she refused the medication and failed to return for follow-up care. Also in July, the mother went to the emergency room with a complaint of shortness of breath; before treatment could be completed, the mother removed her own IV and left. The mother reported to DHS that she

believed the emergency room staff was attempting to give her sodium chloride to stop her heart.

On August 5, the mother was arrested for disorderly conduct after she was found unclothed from the waist down threatening to kill people with a rock. The police report indicates the mother refused to drop the rock despite commands from police and ultimately the police had to physically remove the rock from her possession. She was arrested and released the same day.

The mother gave birth to another child in December 2017 while at a gas station. She admitted receiving no prenatal care for this child and when she went into labor, instead of going to the hospital, she attempted to drive to Kansas to prevent the child from being born in Iowa. During her hospital stay following the delivery, she was admitted to the psychiatric unit on a psychiatric hold due to her paranoid ideations, as well as psychotic and delusional behavior. She was diagnosed as a paranoid schizophrenic and was discharged in January 2018 after stabilizing on medication. The mother's other child was removed from her care.

The mother had supervised visits after K.C.'s removal and, for several months, the mother was regularly attending those visits. Her visits became less consistent over the summer of 2017; DHS reported this was a result of the mother's mental health deteriorating. The mother moved to Kansas City, Kansas in the fall of 2017 and has had little contact with K.C. since she moved. On November 14, the State filed its petition to terminate the parental rights of both K.C.'s mother and

alleged father.[1]  The State alleged the mother's parental rights should be terminated pursuant to Iowa Code section 232.116(1)(h), (i), and (k) (2017).

During the termination hearing, the State presented testimony from the mother and a DHS social worker.  The mother testified she does not believe she has any mental-health diagnosis or issues and does not believe she would benefit from taking medication.  The social worker testified to the mother's mental deterioration in the summer of 2017, which resulted in her missing visits, and noted the mother's statements about changing her phone number because she believed she was being tracked through her cell phone.  The social worker also testified she believed the mother would not consistently take her prescribed medication and K.C.'s safety would be at issue if she were returned to her mother.  The guardian ad litem did not offer evidence or testimony at the hearing but recommended termination based on the mother's mental-health struggles and opined termination would be in K.C.'s best interests.

Following the hearing, the court terminated the mother's parental rights under Iowa Code section 232.116(1)(h).  As noted, the mother appeals.[2]

## II.    Standard of Review

Our review of termination-of-parental-rights proceedings is de novo.  *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016).  "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses."  *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018) (quoting *In re A.M.*,

---

[1] The mother named an individual as K.C.'s putative father but was unable to give any other information.  He has not been located, nor has paternity been established.
[2] The court terminated the putative father's parental rights under Iowa Code section 232.116(1)(b).  He does not appeal.

843 N.W.2d 100, 110 (Iowa 2014)). We will uphold an order terminating parental rights if there is clear and convincing evidence supporting the grounds for termination under Iowa Code section 232.116(1). *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.* Our principle consideration in termination proceedings is the child's best interests—safety; long-term nurturing; and physical, mental, and emotional conditions and needs. Iowa Code § 232.116(2); *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

**III.  Analysis**

Termination of parental rights under chapter 232 follows a three-step analysis. *D.W.*, 791 N.W.2d at 706. First, the court must determine if a ground for termination under section 232.116(1) has been established. *Id.* If a ground for termination is established, the court must then apply the best-interests framework set out in section 232.116(2) to decide if the grounds for termination should result in termination of parental rights. *Id.* at 706–07. Third, if the statutory best-interests framework supports termination of parental rights, the court must consider if any of the statutory exceptions set out in section 232.116(3) should serve to preclude termination of parental rights. *Id.* at 707.

A.  Statutory Grounds for Termination and Best Interests

The court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(h). Section 232.116(1)(h) authorizes termination when (1) the child is three years of age or younger, (2) the child has been adjudicated a CINA, (3) the child has been removed from the physical care of the child's parents for at

least six of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days, and (4) there is clear and convincing evidence that the child cannot be returned to the parent's custody at the time of the termination hearing. *See A.M.*, 843 N.W.2d at 111 (indicating the statutory language "at the present time" refers to the time of the termination hearing).

Elements one through three are not contested. The mother contests the State's establishment of element four. She contends that at the time of the termination hearing, she was living in a safe home in Kansas City with family friends in which she reportedly has a room set up for K.C. She argues DHS has not visited this home and is therefore not in a position to make an assessment about the safety of this home. She also argues that with the support of the family friends, her mental-illness symptoms could be addressed. The district court found the mother "refuses to address, let alone resolve, the obvious and serious mental health concerns raised at the time of the child's removal one year ago."

The mother contends that with the support of her friends, she could address any mental-illness symptoms. However, her testimony at the termination hearing indicated otherwise. The mother testified she was not receiving any care for her mental illness at the time of the hearing and admitted she does not believe she has any metal-health issues. Her petition on appeal includes an admission that she is not taking recommended medication and has not returned for recommended follow-up as she does not believe she has a mental illness. The mother was only recently released from a stay in the psychiatric hospital unit where she was

medicinally stabilized. The mother's petition also admits she has made several statements that appear to present as paranoia.

Given that the mother's mental-health issues were the reason for K.C.'s removal from her care and that the mother continues to deny the existence of mental-health issues coupled with her unwillingness to address them, we find clear and convincing evidence that K.C. could not be returned to her mother's care at the time of the termination hearing and therefor conclude the State met its burden for termination under section 232.116(1)(h).

Next, section 232.116(2) requires us to "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *In re C.B.,* 611 N.W.2d 489, 495 (Iowa 2000) (quoting *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981)).

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010)). "[A]t some point, the rights and needs of the children rise above the rights and needs of the parent." *In re C.S.*, 776 N.W.2d 297, 300 (Iowa Ct. App. 2009). If the child has been placed in foster care, we consider the extent to which the child has become integrated into that family. Iowa Code

§ 232.116(2)(b). For integration, we look at how long the child has been living with the foster family and consider the desirability of continuity for the child. *Id.* § 232.116(2)(b)(1).

The mother's serious mental-health issues brought K.C. to the attention of DHS and the court, but she continues to deny the existence of those issues. She has two founded child-abuse reports based on her denial of critical care to K.C. The mother is not currently able to provide a safe, supportive, and structured home and is not in a position to be able to do so in the foreseeable future. We must consider each child's needs with a sense of urgency. *See C.B.*, 611 N.W.2d at 495.

Additionally, the child has not lived with her mother since she was three weeks old. There is nothing in the record which indicates the lack of contact has had any detrimental effect on K.C. DHS reports that K.C. has bonded with her foster parents who are attentive to her needs and who are willing and able to adopt K.C. Upon our de novo review, we agree with the court's determination that termination is in the best interests of K.C., as returning her to her mother would subject her to instability and uncertainty given her mother's refusal to address her mental-health issues.

B.    Statutory Exceptions to Termination

The mother claims termination of her parental rights would be detrimental to K.C. because of the bond between the mother and child, contending that during her supervised visitation, K.C. demonstrated a bond with her and was excited to see her. She also contends the bond of the extended family would be severed as a result of termination.

"The court need not terminate the relationship between the parent and child if . . . the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). The application of the statutory exceptions to termination is "permissive not mandatory." *M.W.*, 876 N.W.2d at 225. "We may use our discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *Id.* (quoting *In re D.S.*, 806 N.W.2d 458, 475 (Iowa Ct. App. 2011)).

K.C. was removed from her mother's care at the age of three weeks and has not been returned to her care. The mother moved to Kansas City at some point in the fall of 2017 and has had little contact with the child since that time. She has little insight into K.C.'s present condition, health, or needs. The loss of the relationship of extended family members is not a factor to consider under section 232.116(3).

K.C. has bonded with her foster parents who seek to adopt her, and there is nothing in the record which indicates that lack of contact with her mother has had any effect on K.C. The closeness of the parent-child relationship in this case does not preclude termination. Upon our de novo review, we affirm the court's decision not to apply any of the statutory exceptions to termination.

C.    Reasonable Efforts and Extension

The mother's final argument is that the State failed to make reasonable efforts to reunify her with K.C. because the reasonable effort of granting her additional time to have K.C. returned to her care was denied. Additionally, she contends DHS has not reviewed her home in Kansas City for suitability nor has

action been initiated to work with officials in Kansas. Since reasonable efforts and an extension of time are separate matters to analyze, we will address each in turn.

The State contends the mother failed to preserve error on the issue of reasonable efforts because she failed to raise the issue prior to or at the termination hearing. Anticipating this argument, the mother claims that she received ineffective assistance of counsel for failing to timely raise the issue. *See, e.g., In re A.R.S.*, 480 N.W.2d 888, 891 (Iowa 1992). To establish an ineffective-assistance-of-counsel claim in a termination-of-parental-rights case, a parent must show deficiency in counsel's performance and actual prejudice. *See In re D.W.*, 385 N.W.2d 570, 580 (Iowa 1986).

"The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *C.B.*, 611 N.W.2d at 493; *accord* Iowa Code § 232.102(7) (providing that if custody is transferred to DHS, it "shall make every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). "The reasonable efforts concept would broadly include a visitation arrangement designed to facilitate reunification while protecting the child from the harm responsible for the removal." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). The reasonable-efforts requirement is not, however, viewed as a strict substantive requirement at termination. *C.B.*, 611 N.W.2d at 493. Instead, it impacts the State's burden of proving those elements of termination that require reasonable efforts. *Id.* In determining whether reasonable efforts have been made, the court considers "[t]he type, duration, and intensity of services or support offered or provided to the child and the child's family." Iowa Code § 232.102(12)(a)(1). "[T]he nature and extent

of visitation is always controlled by the best interests of the child." *M.B.*, 553 N.W.2d at 345.

The mother contends DHS failed to review the home she lives in Kansas City and no action was taken to work with officials in Kansas to review the home for suitability. She claims counsel was ineffective for failing to request this action under the Interstate Compact for the Placement of Children (ICPC), either before or during the termination hearing. We note that appellate counsel is the same counsel who represented the mother at the termination hearing, but not at prior dispositional hearings.

Upon our de novo review, we agree with the district court that reasonable efforts towards reunification have been made in this case. The DHS social worker testified to the supervised visitation that was provided to the mother, referrals to mental-health professionals, along with bus passes and gift cards. The worker also testified the mother was fairly consistent with attending the visits until the previous summer when her mental health deteriorated. This led to the mother missing visits. The mother subsequently chose to move to Kansas City and since has had little contact with K.C.

The court terminated the mother's rights under Iowa Code section 232.116(1)(h). The mother has not proved that she would have prevailed in countering the evidence in support of termination under paragraph (h). Even if her attorney had requested action under ICPC, action was initiated, and officials in Kansas had reviewed her current housing for suitability, the issue of her mental health and her unwillingness to address those issues remain. K.C. could not be returned to her mother's custody at the time of the termination hearing nor in the

foreseeable future because the mother remains in denial about her mental-health issues. Accordingly, we find the mother failed to show she was actually prejudiced by trial counsel's alleged failure, and her claim of ineffective assistance of counsel fails.

The mother also claims she should have been granted additional time to have her child returned to her care. She contends she should be granted an additional six months to work toward reunification as it would provide her the opportunity to welcome and settle K.C. into the lives of the mother's extended family in Kansas City and allow the mother time to find the best balance of psychiatric medications to treat her mental-health disorders.

If, following a termination hearing, the court does not terminate parental rights but finds there is clear and convincing evidence that the child is a CINA, the court may enter an order in accordance with section 232.104(2)(b). Iowa Code § 232.117(5). Section 232.104(2)(b) affords the juvenile court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period." The court here found that "[t]o think that lasting change will be established by [the mother] in any reasonable length of time is not realistic."

The mother has mental-illness issues that she, thus far, refuses to admit she has and has taken little to no action to address. Her mental health is the underlying problem, which adversely affects her ability to effectively parent and was the impetus for K.C.'s removal from her care. Despite her contention that additional time would give her the opportunity to find the best balance of medications to properly treat her issues, her testimony at the termination hearing

indicates she is still in denial about her mental-health issues. The mother has also recently given birth to another child who was removed from her care shortly after birth due to the mother's mental-health issues.

The mother was placed on a psychiatric hold due to her paranoid ideations, as well as psychotic and delusional behavior. Despite her stabilization and release, she testified during the termination hearing that she was not taking any medication for her issues. She has provided no evidence that she is taking steps to address her mental-health issues before or since her release from the hospital. *See M.W.*, 876 N.W.2d at 224; *see also A.B.*, 815 N.W.2d at 778 (noting a parent's past conduct is instructive in determining the parent's future behavior); *C.B.*, 611 N.W.2d at 495 (noting parents cannot wait until the eve of termination to begin to take interest in their children because "[t]ime is the critical element" in parenting situations); *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997) (stating that when considering what the future holds if a child is returned to the parent, we must look to the parent's past behavior because it may be indicative of the quality of care the parent is capable of providing in the future).

K.C. requires stability and permanency and it would not be in her best interests to delay termination. Therefore we affirm the juvenile court's denial of the requested six-month extension.

## IV. Conclusion

We conclude there is clear and convincing evidence to support the termination of the mother's parental rights under Iowa Code section 232.116(1)(h), termination is in K.C.'s best interests, application of a statutory exception to termination is unwarranted, and an extension of time is unwarranted and contrary

to the child's best interests.  We reject the mother's claims regarding reasonable efforts and ineffective assistance of counsel.  Therefore, we affirm the termination of the mother's parental rights.

**AFFIRMED.**