**IN THE COURT OF APPEALS OF IOWA**

No. 18-1139
Filed September 12, 2018

**IN THE INTEREST OF T.B.,**
**Minor Child,**

**C.L.M., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Polk County, Joseph W. Seidlin,

District Associate Judge.


        A mother appeals the termination of her parental rights to her child.

**AFFIRMED.**


        Jonathan M. Causey of Causey & Ye Law, PLLC., Des Moines, for appellant

mother.

        Thomas J. Miller, Attorney General, and John B. McCormally, Assistant

Attorney General, for appellee State.

        Erin E. Mayfield of Youth Law Center, Des Moines, guardian ad litem for

minor child.


        Considered by Potterfield, P.J., and Bower and McDonald, JJ.

**McDONALD, Judge.**

A mother, Copa, appeals from an order terminating her parental rights in her child, T.B., pursuant to Iowa Code section 232.116(1)(g) and (h) (2018). The mother challenges the sufficiency of the evidence supporting the statutory grounds authorizing the termination of her parental rights, the juvenile court's finding the State made reasonable efforts to facilitate her reunification with the child, and the denial of her request for six additional months to work toward reunification. The mother also contends termination of the parent-child relationship is not the child's best interest, the State failed to provide a social history report, and the State failed to comply with the Indian Child Welfare Act. Finally, she claims she received ineffective assistance of counsel from her first attorney.

I.

This family first came to the attention of the Iowa Department of Human Services (IDHS) in 2014 when IDHS removed two children from Copa's care because of her methamphetamine use. Despite IDHS intervention, Copa continued to use methamphetamine. Ultimately, she consented to the termination of her parental rights with respect to the two children removed from her care.

The family again came to the attention of IDHS. The day after T.B.'s birth in 2014, there was a report of domestic violence. T.B. was removed from the mother's care in December 2014, and a child-in-need-of-assistance proceeding was initiated. The juvenile court closed the case and returned T.B. to Copa's care in January 2016.

Shortly thereafter, following a subsequent incident of domestic abuse in the home, another assistance proceeding was initiated. The juvenile court permitted

T.B. to remain in Copa's care. As part of the case plan, Copa was required, among other things, to take random drug screens due to her history of substance abuse. In particular, she had a long history of using methamphetamine.

The child did not remain in Copa's care for long. Copa tested positive for methamphetamine in January 2017, and T.B. was removed from her care and placed in foster care. Copa requested her aunt be considered as a placement option for T.B. The juvenile court did not approve of the requested placement because T.B.'s social worker had past altercations with the aunt and did not believe the two could interact constructively. Copa continued to test positive for methamphetamine in subsequent tests. Initially, Copa denied drug use and accused IDHS of setting her up for failure. Eventually, Copa conceded she relapsed, but she then recanted her concession, arguing her attorney coerced her into admitting drug use. Copa's recantation is not credible. In an email from December 2017, Copa admitted to her social worker she had been using methamphetamine since November 2016 and realized she needed to make changes in her life.

The State petitioned to terminate Copa's parental rights. Copa contested the termination of her parental rights. The juvenile court terminated Copa's parental rights pursuant to Iowa Code section 232.116(1)(g) and (h). Copa now appeals.

II.

This court reviews termination proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework authorizing the termination of a parent-child relationship is well established. *See In re A.S.*, 906 N.W.2d 467,

472–73 (Iowa 2018) (setting forth the statutory framework). The burden is on the State to prove by clear and convincing evidence (1) the statutory ground or grounds authorizing the termination of parental rights and (2) termination of parental rights is in the best interest of the child. *See In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017). Even where the State proves its case, however, the juvenile court has the discretion to preserve the parent-child relationship where the parent proves by clear and convincing evidence a statutory factor allowing preservation of the parent-child relationship. *See* Iowa Code § 232.116(3) (setting forth permissive factors to avoid the termination of parental rights); *In re A.S.*, 906 N.W.2d at 476 (stating it is the parent's burden to prove an exception to termination).

## III.

## A.

We begin by addressing Copa's challenge to the sufficiency of the evidence. Where, as here, "the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We turn our attention to Iowa Code section 232.116(1)(h).

On de novo review, we conclude there is clear and convincing evidence proving this statutory ground authorizing the termination of Copa's parental rights. Copa contests only the fourth element under section 232.116(1)(h), which requires "clear and convincing evidence the child[] would be exposed to an appreciable risk of adjudicatory harm if returned to the parent's custody at the time of the termination hearing." *In re E.H.*, 2017 WL 2684420, at *1. At the termination

hearing, Copa conceded "[t]here's no way [T.B.] can be returned to my care today." We agree. At the time of the termination hearing, she was unemployed and homeless. *See In re L.B.*, No. 18-1017, 2018 WL 3650370, at *1 (Iowa Ct. App. Aug. 1, 2018) (collecting cases concluding a parent is unable to provide sufficient care without stable housing or employment). She had not resolved, or meaningfully attempted to resolve, her methamphetamine addiction. She failed at several outpatient treatment programs and left an inpatient program after only two and one-half weeks. The district court found, and we agree, Copa's methamphetamine use led to her increasingly erratic behavior. Copa's continued use of methamphetamine during the pendency of this case creates a risk of adjudicatory harm to T.B. *See id.* (collecting cases concluding a child may not be returned to a drug-addicted parent).

Related to her challenge to the sufficiency of the evidence supporting termination of her parental rights, Copa contends the State failed to make reasonable efforts toward reunification with the child. As a general rule, the State must make reasonable efforts to return a child to his home following removal. *See* Iowa Code § 232.102(9) (providing IDHS must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). "[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by [IDHS] to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). Reasonable efforts "facilitate reunification while protecting the child from the harm responsible for the removal." *In re M.B.*, 553

N.W.2d 343, 345 (Iowa Ct. App. 1996). Reasonable efforts vary given the particular needs of each family. *See In re C.B.*, 611 N.W.2d at 493 (discussing scope of mandate).

Here, the State made reasonable efforts to facilitate reunification of Copa and T.B. Copa takes issue with the limited and supervised visitation provided to her, the lack of housing assistance provided, and IDHS's failure to place T.B. with her family members rather than a foster family. According to Copa, these deficiencies "set off a chain reaction that triggered past traumas and led [Copa] into relapse." Copa raised these issues in the juvenile court, and the juvenile court founds the complaints were not substantiated. We agree. IDHS provided Copa with numerous services, but she failed to avail herself of the services provided. Copa often missed visitations. When she exercised her visitation, she often failed to focus her attention on T.B., making expanded visitation or less-supervised visitation inappropriate. IDHS did consider placement of T.B. with Copa's family but reasonably decided against the option given the family's acrimonious relationship with IDHS. Copa received significant housing assistance, including a social worker dedicated to help Copa find suitable housing. When the social worker inquired what additional housing services Copa needed, Copa declined to request more. Copa was provided with services to assist her in overcoming her methamphetamine addiction, but she failed to use the services to attain sobriety. In addition to these services, Copa was provided with family safety, risk, and permanency services; individual therapy; child-parent psychotherapy; case-management services; family team meetings; and transportation assistance. The lack of reasonable efforts to facilitate reunification falls on Copa and not the State.

Copa contends termination is not in T.B.'s best interest due to their strong bond and argues T.B.'s foster placement with a family of a different racial and religious background would "destroy [T.B.]'s religion, culture, and heritage." When making a best-interest determination, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010). Given T.B.'s young age, three years, and the extended time spent out of Copa's care, in excess of twelve months in this proceeding, the bond between them is limited. It is certainly not strong enough to preclude termination of Copa's parental rights. *See In re A.H.*, No. 17-1717, 2017 WL 6513633, at *2 (Iowa Ct. App. Dec. 20, 2017) (rejecting strength of bond argument where "[b]oth children have been removed from their parents for nearly half of their young lives"). Copa's desire to maintain T.B.'s religion, culture, and heritage is understandable. However, there is no evidence that the termination of Copa's parental rights will result in her expressed concerns occurring. Indeed, T.B.'s foster mother expressed interest in maintaining T.B.'s religion, culture, and heritage. Further, those considerations are secondary to the need to remove T.B. from the risk of adjudicatory harm created by Copa's methamphetamine use.

In sum, on de novo review, we conclude there is clear and convincing evidence authorizing the termination of Copa's parental rights in T.B. and the termination of Copa's parental rights is in the best interest of the child.

B.

We next address Copa's claim the juvenile court should have granted Copa an additional six months to work toward reunification. Iowa Code section 232.104(2)(b) permits a court to enter an order deferring permanency for six months so long as the need for removal would no longer exist at the end of the six-month period. In granting an extension of time, the juvenile court must "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal . . . will no longer exist at the end of the [extension]." Iowa Code § 232.104(2)(b). Copa cites her efforts to address her drug use as evidence that she could safely parent T.B. if given six additional months of time. We disagree. Copa's rights in two other children were terminated due to her methamphetamine abuse and domestic violence in the home. Following that case, this case was initiated due to Copa's methamphetamine abuse and domestic violence in the home. During this case, Copa's efforts to address her methamphetamine addiction were minimal. She did enter inpatient substance-abuse treatment, but she left without completing the program. She admitted to using methamphetamine over the life of this case. Her past performance is indicative of her future conduct. *See In re A.B.*, 815 N.W.2d at 778 (noting past conduct is predictive of future conduct). Given her long history of substance abuse, this court cannot cite any "specific factors, conditions, or expected behavioral changes" that indicate the need for removal will abate in six months. *See* Iowa Code § 232.104(2)(b). "[T.B.] cannot wait for responsible parenting" and deserves permanency now. *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990).

C.

Copa claims the State failed to file a current social history report prior to entry of the dispositional order. Copa did not raise this issue in the juvenile court. It is not preserved for appellate review. *See In re A.B.*, 815 N.W.2d at 773 (noting "the general rule that appellate arguments must first be raised in the trial court applies to [child-in-need-of-assistance proceedings] and termination of parental rights cases." (citation omitted)); *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Even if Copa had preserved this issue for appellate review, the issue would not entitle her to any relief in this termination proceeding. Iowa Code section 232.97 requires the court receive and consider a social report at least five days prior to entering disposition in an assistance proceeding. As such, the time to make her challenge was at the time of the dispositional order in the assistance proceeding and not on appeal of the termination order. *Cf. In re A.M.*, No. 17-1920, 2018 WL 541038, at *2 (Iowa Ct. App. Jan. 24, 2018) (challenging a dispositional order in child-in-need-of-assistance case following its entry).

D.

Copa contends the State failed to comply with the Indian Child Welfare Act (ICWA). ICWA recognizes the interests of Native American tribes in tribal children and seeks to place Native American children in homes best able to preserve the child's tribal relationship and heritage. *See* Iowa Code § 232B.2; *see also In re D.S.*, 806 N.W.2d 458, 465 (Iowa Ct. App. 2011). As the party seeking termination of Copa's parental rights in T.B., the State is required to determine T.B.'s

association with possible Native American tribes. *See* Iowa Code § 232B.4(2). If it is determined the child has Native American heritage, then notice of the proceedings must be sent to the child's Native American custodians and the child's tribe. Iowa Code § 232B.5(4). Proceedings may not begin until ten days after the interested parties receive notice. Iowa Code § 232B.5(5). The child's tribe and Native American custodians may intervene at any point in the proceedings. Iowa Code § 232B.14.

ICWA is not implicated here. A social worker provided an affidavit stating she inquired with the parents regarding any Native American heritage and the parents denied any such heritage. The social worker's affidavit is confirmed by a text message from Copa, stating, "I am not Indian I keep telling you this." The social worker's investigation and affidavit satisfies the dictates of Iowa Code section 232B.4(2). While there was some assertion the child was of Native American heritage, the assertion was not sufficient to trigger any further action. An unsigned note written on a Notice of Child Abuse Assessment sent to the juvenile court states, "whoever told you we didn't have Native American in us is a lie, why don't some body ask [the social worker] how many children she lied on there (sic) mothers and fathers and sold there (sic) babys (sic)." Given that the note is unsigned and the author's identity is uncertain, we cannot conclude the handwritten note constituted notice to trigger further action. *See* Iowa Code § 232B.5(3)(a) (stating the court takes notice of claims made by certain individuals such as an "interested person, an officer of the court, a tribe, an Indian organization, a public or private agency, or a member of the child's extended family").

E.

Finally, Copa argues she received ineffective representation from her first attorney. "The test for ineffective assistance of counsel in termination cases is generally the same as in criminal proceedings." *In re A.R.S.*, 480 N.W.2d 888, 891 (Iowa 1992). It requires a showing of counsel's deficient performance and resulting prejudice. *Id.* Copa argues her initial counsel was ineffective in two respects. First, her counsel failed to contest T.B.'s removal following Copa's positive test for methamphetamine. Second, Copa contends counsel coerced her into admitting to drug use.

Copa has not established deficient performance. There was no basis for counsel to challenge removal of the child. There was significant evidence Copa was using methamphetamine at the time of removal and her methamphetamine use posed a risk of harm to the child. There is no evidence Copa's counsel coerced her into admitting use.

Neither has Copa established prejudice. There is strong evidence establishing her methamphetamine use and the necessity of removal. Copa repeatedly tested positive for methamphetamine use despite her denial of use. After denying use for almost one year, Copa admitted in an email sent in December 2017 that she had, in fact, been using methamphetamine since November 2016. Copa's conduct after the initial test would have justified removal of the child from her care. Copa's ineffective-assistance claim fails.

IV.

Finding no merit in the mother's challenge to the termination of her parental rights, we affirm the judgment of the juvenile court.

**AFFIRMED.**