# IN THE COURT OF APPEALS OF IOWA

No. 19-0006
Filed March 6, 2019

**IN THE INTEREST OF B.S.,**
**Minor Child,**

**G.S., Mother,**
　　Appellant.

_____

　　Appeal from the Iowa District Court for Page County, Amy L. Zacharias, District Associate Judge.

　　A mother appeals the termination of her parental rights. **AFFIRMED.**

　　Justin R. Wyatt of Woods & Wyatt, PLLC, Glenwood, for appellant mother.

　　Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

　　Katherine Murphy of Kate Murphy Law, PLC, Glenwood, for appellees intervenors.

　　Vicki Danley, Sidney, guardian ad litem for minor child.

　　Considered by Doyle, P.J., and Mullins and McDonald, JJ.

**McDONALD, Judge.**

Geraldine appeals from an order terminating her parental rights in her child, B.S. The juvenile court terminated Geraldine's parental rights pursuant to Iowa Code section 232.116(1)(h) (2018). On appeal, Geraldine challenges the sufficiency of the evidence supporting the statutory grounds authorizing termination of her parental rights; claims the Iowa Department of Human Services (IDHS) failed to make reasonable efforts toward reunification; claims she received ineffective assistance of counsel; suggests her constitutional right to equal protection was violated; and argues termination is not in the child's best interest due to Geraldine's close bond with B.S. Geraldine seeks reversal of the termination order or six additional months to work toward reunification.

I.

This court reviews termination proceedings de novo. *See In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). The statutory framework authorizing the termination of a parent-child relationship is well established. *See In re A.S.*, 906 N.W.2d 467, 472-73 (Iowa 2018) (setting forth the statutory framework). The burden is on the State to prove by clear and convincing evidence (1) the statutory ground or grounds authorizing the termination of parental rights and (2) "termination of parental rights is in the best interest[] of the child[]." *In re E.H.*, No. 17-0615, 2017 WL 2684420, at *1 (Iowa Ct. App. June 21, 2017).

II.

We first address Geraldine's challenge to the sufficiency of the evidence supporting termination of her rights pursuant to section 232.116(1)(h). She limits her challenge to the fourth element of paragraph (h). That element "require[s] clear

and convincing evidence the children would be exposed to an appreciable risk of adjudicatory harm if returned to the parent's custody at the time of the termination hearing." *Id.*

Geraldine has struggled to maintain her sobriety throughout the pendency of these proceedings. She tested positive for methamphetamine several times. Following a period of sobriety, B.S. was returned to Geraldine's care only for Geraldine to stop complying with her mandatory drug testing. She missed twelve drug screenings from March 27, 2018 to July 17, 2018. *Cf. In re C.W.*, No. 14-1501, 2014 WL 5865351, at *2 (Iowa Ct. App. Nov. 13, 2014) (noting missed drug screenings are presumed positive). Then, on July 18, Geraldine tested positive for methamphetamine and amphetamines.

There is a nexus between Geraldine's substance abuse and an appreciable risk of adjudicatory harm to the child. The child's meconium tested positive for the presence of marijuana, demonstrating the mother used controlled substances while pregnant with the child. The evidence shows the mother supervised the child while under the influence of methamphetamine. The mother also tested positive for methamphetamine while pregnant with another child. These facts are sufficient to establish the child could not be returned to the mother's care at the time of the termination hearing without creating an appreciable risk of adjudicatory harm to the child. *See In re J.S.*, 846 N.W.2d 36, 42 (Iowa 2014) ("[A] juvenile court could reasonably determine that a parent's active addiction to methamphetamine is 'imminently likely' to result in harmful effects to the physical, mental, or social wellbeing of the children in the parent's care."); *In re T.G.*, No. 18-1195, 2019 WL 156663, at *2 (Iowa Ct. App. Jan. 9, 2019) ("Alexandra's continued substance

abuse creates an appreciable risk of harm to T.G."); *In re A.Z.*, No. 18-1420, 2018 WL 4909831, at *2 (Iowa Ct. App. Oct. 10, 2018) (finding children could not be returned to the mother when she did not address her substance-abuse issues); *In re J.E.*, No. 18-1340, 2018 WL 4629356, at *1 (Iowa Ct. App. Sept. 26, 2018) ("The mother's methamphetamine use, both while caring for the child at issue and while pregnant with another child, demonstrates a sufficient nexus between the mother's substance abuse and danger to the child to authorize termination of the mother's parental rights on the grounds asserted."); *In re A.W.*, No. 18-0094, 2018 WL 1182618, at *1 (Iowa Ct. App. Mar. 7, 2018) (finding mother's failure to address substance-abuse issues supported termination of her parental rights); *In re C.E.*, No. 15-0835, 2015 WL 5578395, at *1 (Iowa Ct. App. Sept. 23, 2015) (collecting cases finding children could not be returned to parents with unresolved substance-abuse issues).

Geraldine also continues to interact with B.S.'s father, Treyton, despite acknowledging Treyton is a trigger for her substance abuse. In fact, Geraldine used methamphetamine with Treyton as recently as July 2018. There is also a history of domestic abuse between the parents. As a result of one incident, a no-contact order was entered between the parents. However, Geraldine requested the no-contact order be lifted a few months later. The two have attended court hearings together and a family safety, risk, and permanency worker observed Treyton at Geraldine's home when picking her up for visitation several times. Geraldine's continued relationship with Treyton also places B.S. at an appreciable risk of harm. *See T.G.*, 2019 WL 156663, at *2; *In re A.S.*, No. 17-1810, 2018 WL

542646, at *1 (Iowa Ct. App. Jan. 24, 2018) (collecting cases concluding a child cannot be returned to a parent who continues to interact with an abusive party).

For these reasons, on de novo review, we conclude there is clear and convincing evidence supporting termination of Geraldine's parental rights pursuant to section 232.116(1)(h).

III.

Geraldine argues IDHS failed to make reasonable efforts toward reunification because it failed to pay for her inpatient substance-abuse treatment. She presents the claim as a direct claim and indirectly as part of two constitutional claims.

As part of its ultimate proof, the State must establish it made reasonable efforts to return the child to the child's home. *See* Iowa Code § 232.102(9) (providing IDHS must make "every reasonable effort to return the child to the child's home as quickly as possible consistent with the best interests of the child"). "[T]he reasonable efforts requirement is not viewed as a strict substantive requirement of termination. Instead, the scope of the efforts by [IDHS] to reunify parent and child after removal impacts the burden of proving those elements of termination which require reunification efforts." *In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000). The core of the reasonable-efforts mandate is the child welfare agency must make reasonable efforts "to facilitate reunification while protecting the child from the harm responsible for the removal." *In re M.B.*, 553 N.W.2d 343, 345 (Iowa Ct. App. 1996). The nature of the reasonable-efforts mandate is determined by the circumstances of each case. *See C.B.*, 611 N.W.2d at 493 (discussing scope of mandate).

With respect to Geraldine's direct claim that IDHS failed to make reasonable efforts to facilitate reunification, we conclude the issue is not preserved for appellate review. Geraldine never requested additional or alternative services prior to the termination hearing. *See In re A.A.G.*, 708 N.W.2d 85, 91 (Iowa Ct. App. 2005) ("The Department has an obligation to make reasonable efforts toward reunification, but a parent has an equal obligation to demand other, different, or additional services prior to a permanency or termination hearing.").

In her first constitutional claim, Geraldine asserts she received ineffective representation from her trial counsel for "not identifying issues or adequately addressing the lack of reasonable efforts." "The test for ineffective assistance of counsel in termination cases is generally the same as in criminal proceedings." *In re A.R.S.*, 480 N.W.2d 888, 891 (Iowa 1992). It requires a showing of counsel's deficient performance and resulting prejudice. *Id.*

We conclude this claim does not entitle Geraldine to any relief. First, Geraldine has not identified the issues trial counsel failed to identify. We cannot grant relief on the basis that her trial counsel was ineffective in "not identifying issues" without any specification of the issues on appeal. Second, with respect to the reasonable-efforts argument, Geraldine has not established constitutional prejudice. The gist of Geraldine's claim is that her counsel should have requested IDHS pay for inpatient substance-abuse treatment. The record reflects, however, that this is not a service option. An IDHS worker testified IDHS "does not have the services to pay for inpatient treatment." In addition, the record reflects IDHS provided Geraldine with many other services designed to help Geraldine attain sobriety, and Geraldine failed to avail herself of these resources. The reasonable-

efforts mandate does not require the department to provide every conceivable resource to assist a family, only those that are available and reasonable under the circumstances. IDHS met that mandate in this case, and counsel was not constitutionally ineffective in failing to request that IDHS pay for inpatient treatment.

In her second constitutional claim, Geraldine asserts an equal protection argument. The Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. We conclude Geraldine's equal protection argument is waived by her failure to develop an argument supported by legal authority. *See In re J.G.*, No. 18-1701, 2019 WL 319873, at *1 n.1 (Iowa Ct. App. Jan. 23, 2019). To the extent she asserts a claim of ineffective assistance for trial counsel's failure to bring an equal protection claim, that claim also fails. Geraldine suggests she was afforded reduced services because of her status as an undocumented immigrant, violating her right to equal protection. She indicates because she did not have access to Medicaid[1] to fund inpatient treatment, she was not afforded the same services afforded citizens. However, the record makes clear IDHS afforded Geraldine the same services as those available to a citizen. The IDHS worker made clear IDHS

---

[1] Medicaid is only available to citizens and qualified non-citizens. *See Determining Eligibility for Medicaid*, Medicaid.gov, https://www.medicaid.gov/medicaid/ eligibility/index.html (last visited Feb. 18, 2019) ("[Medicaid beneficiaries] must be either citizens of the United States or certain qualified non-citizens, such as lawful permanent residents."); Iowa Dep't of Human Servs., Improve Iowans' Health Status 3-2, http://dhs.iowa.gov/sites/default/files/15-6_Improve_Health_Status.pdf ("Members must meet certain income criteria based on multiple eligibility standards and be a U.S. citizen or a legal qualified non-citizen. Citizenship status is verified through the Social Security Administration and legal non-citizens must provide original documentation to verify their status.").

does not provide funding for inpatient treatment to any parent, citizen or non-citizen. There was no equal protection violation for counsel to assert. *See Bowers v. Polk Cty. Bd. of Supervisors*, 638 N.W.2d 682, 689 (Iowa 2002) (noting "[t]he Equal Protection Clause requires that similarly-situated persons be treated alike"). Therefore, Geraldine cannot show her attorney performed deficiently, and her ineffective-assistance claim fails.

IV.

Geraldine argues termination is not in B.S.'s best interest due to her close bond with the child. The court must reach a best-interest determination, for which we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2); *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) (citation omitted).

We conclude termination is in B.S.'s best interest; she deserves permanency. What's past is prologue. *See In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) ("When making this decision, we look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future." (quoting *In re C.K.*, 558 N.W.2d 170, 172 (Iowa 1997))). Geraldine's past conduct suggests she will continue to struggle with addiction and be unable to adequately care for B.S. Although the parent-child bond may preclude termination, we do not find such a bond here. *See* Iowa Code § 232.116(3)(c). Given B.S.'s young age, we cannot agree that Geraldine's bond with B.S. is so strong as to offset the benefits of termination. *See A.M.*, 843 N.W.2d at 113.

V.

Finally, Geraldine requests an additional six months to work toward reunification. The court may defer termination if "specific factors, conditions, or expected behavioral changes" lead the court to "determin[e] that the need for removal of the child from the child's home will no longer exist at the end of [an] additional six-month period." Iowa Code § 232.104(2)(b).

At the termination hearing, Geraldine noted she was scheduled to enter inpatient treatment in the near future and suggested she would be successful because she understood the gravity of the situation. However, we have no reason to believe Geraldine would be more successful in her second venture into inpatient treatment than she was the first time. Her promises to follow through because she now understands the stakes ring hollow. The juvenile court previously granted Geraldine an extension of time, but Geraldine relapsed. Despite knowing she risked losing her parental rights to B.S. throughout this case, she continued to abuse drugs and otherwise demonstrate her inability to provide for the welfare of her child. At the time of the termination hearing, the child had been out of Geraldine's care for fifteen of the nineteen months of the child's life. Based on our de novo review of the record, we cannot conclude the need for removal will no longer exist at the end of an additional six-month period.

VI.

For the foregoing reasons, we affirm the termination of Geraldine's parental rights.

**AFFIRMED.**