# IN THE COURT OF APPEALS OF IOWA

No. 21-0682
Filed July 21, 2021

IN THE INTEREST OF A.R.,
Minor Child,

A.R., Father,
        Appellant.
_____

        Appeal from the Iowa District Court for Franklin County, Peter B. Newell,

District Associate Judge.


        The father appeals the termination of his parental rights to his child.

**AFFIRMED.**


        Nellie D. O'Mara of Prichard Law Office, PC, Charles City, for appellant

father.

        Thomas J. Miller, Attorney General, and Tabitha J. Gardner, Assistant

Attorney General, for appellee State.

        Alesha M. Sigmeth Roberts of Sigmeth Roberts Law, PLC, Clarion, attorney

and guardian ad litem for minor child.


        Considered by Doyle, P.J., Tabor, J., and Potterfield, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206

(2021).

**POTTERFIELD, Senior Judge.**

The father appeals the termination of his parental rights to his child, A.R., born in 2019. The juvenile court terminated the father's rights pursuant to Iowa Code section 232.116(1)(h) (2021).[1] Here, the father claims the State failed to make reasonable efforts to reunify him with A.R. and claims he should get additional time because of this failure. Apparently recognizing the issue was not properly raised in the juvenile court for error-preservation purposes, the father maintains his first counsel—who withdrew about six weeks before the State filed the petition to terminate—provided ineffective assistance. Specifically, he claims counsel breached duties in failing to advise the father (1) there were additional services he could request (and, correspondingly, raise the issue of reasonable efforts with the juvenile court) and (2) advise the father the failure to participate in services would lead to the termination of his parental rights.

We review termination of parental rights de novo. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). "The test for ineffective assistance of counsel in termination cases is generally the same as in criminal proceedings." *In re A.R.S.*, 480 N.W.2d 888, 891 (Iowa 1992). "In order to establish an ineffective assistance claim, it must be shown that (1) counsel's performance is deficient, and (2) actual prejudice resulted." *Id.* The burden of proving counsel provided ineffective assistance is on the parent claiming it. *Id.* To demonstrate prejudice, the father needs to prove that, but for his counsel's alleged failures, "the result of the termination of parental

---

[1] The mother's parental rights were also terminated; she does not appeal.

rights proceedings would likely have been different." *In re T.P.*, 757 N.W.2d 267, 275 (Iowa Ct. App. 2008).

First, we consider the father's claim that counsel failed to advise him his parental rights would be terminated if he failed to participate in services. That is not an accurate statement of law. "[T]he termination of parental rights because of a parent's failure to follow the case plan, without a showing of harm, would run afoul of due process." *In re M.S.*, 889 N.W.2d 675, 681 (Iowa 2016). So counsel cannot be found ineffective for failing to advise as much. And it was not the father's failure to follow the case plan and participate in services that led to the termination of his parental rights. Rather, it was his continued use of methamphetamine throughout the case, including after the first day of the termination hearing.[2] If the father participated in recommended services, such as attending substance-abuse treatment, they may have helped him achieve a sober lifestyle and ultimately have A.R. returned to his care before the statutory time period lapsed. *See* Iowa Code § 232.116(1)(h) (allowing the court to terminate the rights of a parent to a child three years or younger when the child has been out of the parent's custody at least six months). But it was not his failure to participate that underpinned the court's decision to terminate.

The father's testimony and his claim on appeal are narrowly focused on what his first attorney told him. But the father admitted at trial that the Iowa Department of Human Services (DHS) and family support specialist told him what

---

[2] The first day of the termination hearing took place on February 22, 2021. At the second day of the hearing, on April 19, the father testified he had been sober since February 23, 2021.

was required of him to have the child returned.[3]  He was asked if he recalled DHS telling him he needed "employment" and "clean drug tests," and he responded "yes" to each.  Additionally, he testified DHS told him to "[j]ust basically have a stable home and—and—and to be clean, to be sober."  He also testified, "It was like an every visit type of deal how—how we were doing and we're still working on that and how we were managing our drug abuse and stuff like that."  Even if the father's attorney did not advise him what was necessary to have A.R. returned to his care, it is clear the father was aware of what he needed to do.  And he has not proved the termination proceeding probably would have gone differently if his attorney—as opposed to other professionals involved with the case—told him this information.[4]  This claim fails.

Next, we consider the father's claim his attorney failed to tell him about other services he could request and failed to raise the issue of reasonable efforts to the juvenile court.  The father lists several services he claims the mother was told about or received that were not similarly provided to him.  But "the reasonable-efforts mandate does not create a menu from which discerning parents may order specific services."  *In re A.C.*, No. 20-0964, 2020 WL 7021569, at *2 (Iowa Ct. App. Nov. 30, 2020) (citation omitted).  And because we are considering this claim under

---

[3] The father was asked, "So besides DHS and the family service worker, did you know what was required of you?"  To which he responded, "No, I didn't."

[4] Insofar as the father implies he was not aware termination of his rights was a possible consequence, we note the juvenile court's orders include the following:

> The parents of the child are advised that the conditions which have necessitated the removal of the child from the child's home must be corrected as quickly as possible.  The consequences of a permanent removal of the child from the child's home may include termination of the parents' rights with respect to the child.

the framework of ineffective assistance, the father must prove that he would have requested some service he did not otherwise receive and that service would likely have resulted in A.R. returning to his care. It is not immediately apparent how most of the services he lists, including a housing voucher, more individual visits, and gas cards or bus passes, are related to the main reason his rights were terminated—his continued use of methamphetamine. And the father does not explain how requesting and receiving these services would have likely led to a different result at the termination proceeding. *Cf. Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994) (noting, in postconviction-relief context, "[w]hen complaining about the adequacy of an attorney's representation, it is not enough to simply claim that counsel should have done a better job. The applicant must state the specific ways in which counsel's performance was inadequate and identify how competent representation probably would have changed the outcome." (internal citation omitted)).

As part of his claim counsel provided ineffective assistance by failing to advise him of other services he could request, the father asserts "DHS helped the mother to get into inpatient services" while he "sought out and went to inpatient services on his own." The family support specialist testified that she spoke to the father about a specific substance-abuse treatment center in November 2020 and "he wasn't—he didn't show that he was interested in that at all." Additionally, the social worker testified both parents were offered treatment for substance abuse through another provider. The father completed multiple substance-abuse evaluations for that provider but did not successfully complete the recommended treatment. The father went through a different, third provider to attend inpatient

substance-abuse treatment, but he did not enter the program until late February 2021—after the first day of the termination hearing took place and about a year after A.R. was formally removed from his care.  We recognize attending inpatient substance-abuse treatment earlier in the pendency of the case may have helped the father achieve a sober lifestyle and allow him to resume parenting A.R.  But the father has not proved the lengthy delay between DHS's involvement with this family in December 2019 and the father's meaningful participation in substance-abuse treatment in February 2021 is attributable to either the representation of his first attorney or DHS's failure to provide reasonable efforts.

The father's claims of ineffective assistance fail.  And he does not otherwise contest the termination of his parental rights, so we affirm without further consideration.  *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (declining to discuss parts of the three-step analysis for termination when the parent did not specifically dispute the step).

**AFFIRMED.**