# IN THE COURT OF APPEALS OF IOWA

No. 19-0296
Filed June 5, 2019

**IN THE INTEREST OF A.L.,**
**Minor Child,**

**A.L., Father,**
     Appellant,

**D.W., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

A mother and father separately challenge the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellant father.

Elizabeth A. Ryan of Benzoni Law Office, P.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Chuck Fuson of Youth Law Center, Des Moines, attorney and guardian ad litem for minor child.

Considered by Vogel, C.J., and Mullins and Bower, JJ.

**MULLINS, Judge.**

A mother and father separately challenge the termination of their parental rights to their minor child.

## I.    Background Facts and Proceedings

The mother and father are the parents of A.L., born in July 2015.  The child came to the attention of the Iowa Department of Human Services (DHS) in January 2017.  As the mother was in the process of being arrested for operating a motor vehicle while intoxicated, she disclosed to police that she had left her five children unattended in a hotel room.  The children's ages ranged from ten years old to one year old, the youngest being the child in interest.[1]  When police arrived at the hotel, they found the children in a room in deplorable condition.  Soiled diapers, dirty laundry, and trash littered the floor; the room had a foul odor; mattresses were torn apart; and electrical wires were exposed.  The younger children's diapers were soiled and had not been changed for several hours.  Police believed the mother had likely left the children unattended on previous occasions.  The police also believed the older children's responses to questions suggested the mother coached the children on what to say.  The mother was subsequently charged with multiple counts of child endangerment and jailed.  After its investigation, DHS returned founded child-abuse assessments against the mother for denial of critical care in relation to each child.[2]

---

[1] The father in this case is only the father of A.L.
[2] DHS previously returned several founded child-abuse assessments against the mother in March 2011 for denial of critical care.  The mother had allowed an individual charged with child endangerment and assault to take care of one of her children.  The mother was aware the individual was working with DHS regarding issues with his own children.  Later, DHS returned a founded assessment against this individual after he committed domestic violence against the mother when the children were present.

The court ordered the children's immediate removal from the mother's care and placed the children in the temporary custody of DHS. None of the children's fathers were in a position to have the children placed with them, so the children ultimately ended up in foster care. DHS provided supervised visitation for the mother and father of A.L. DHS recommended substance-abuse treatment, individual therapy, and parenting classes for the mother and recommended substance-abuse treatment and individual therapy for the father.

The court adjudicated A.L., along with the other children, to be a child in need of assistance (CINA) in February. Because none of the children's fathers were in a position to care for the children when they were removed from the mother's care, the court also considered this a removal from all the fathers' care.

The father of A.L. suffers from several mental-health issues and takes medication. He also has a history of drug use, including cocaine, heroin, and methamphetamine. The father suffered a stroke when he was twenty-one years old due to excessive methamphetamine use. The father attended treatment but relapsed in May 2017. He also had a mental breakdown and was subsequently hospitalized in a psychiatric unit. The father stopped attending treatment and therapy services after claiming his counselor suggested they go buy some methamphetamine together. The father struggled with housing and employment. After his relapse, the father became inconsistent with his visitation, missing a month's worth of visits. He informed DHS this was due to needing some personal time. Due to his behaviors, DHS believed the father had relapsed again. The mother reported that domestic violence was present in all of her relationships, including with the father. The father denied physically abusing the mother but

admitted the relationship with his paramour was volatile and he had physically abused her. He was arrested in June for throwing a brick through his paramour's window.

In June, the mother was arrested for driving while barred as a habitual offender and spent over a month in jail. Once released, she was homeless. She stayed with family or friends, including an uncle who was an active alcoholic. In July, the mother reported she was pregnant. In August, she entered Hope Ministries shelter and began engaging in its substance-abuse and mental-health services. Due to the mother's progression in services, her visitation with the children increased and ultimately the two oldest children were returned to her care in December. The mother also gave birth to another child in December. The three youngest children were returned to her care in January 2018. The court conditioned the children's return to the mother's care on her continued placement at Hope Ministries.

After the children were placed with the mother, she struggled to balance her treatment with meeting the children's needs. She often blamed her inability to gain insight and attend required classes on the fact that she had six children. The room she shared with the children was in disarray and appeared to be on a path to the deplorable conditions found in the hotel, which led to the children's removal and DHS's intervention. In May, the mother was discharged from Hope Ministries after being unable to successfully complete its program. She failed to follow through on expectations, had unauthorized medication, and failed to take accountability. Due to having no housing, the mother became despondent and threatened to kill herself. She was hospitalized for a short period of time on a psychiatric evaluation

hold. All the children were again removed from her care. A.L. was placed with the paternal grandmother, and the other children were placed in foster care. When DHS spoke with the mother about the importance of ongoing therapy, the mother reported she had reengaged in mental-health services. However, her therapist reported to DHS that she had not seen the mother in over a year and the mother failed to attend a recent appointment. The mother then began sessions with a new therapist.

The father was incarcerated on two occasions for forgery during the proceedings, in December 2017 and August 2018. In its October permanency order, the court found the father was not in a position to have custody and that both the mother and father were not making reasonable progress to achieve the permanency goal of reunification or complying with other provisions of the permanency plan. The court modified the permanency goal from reunification to termination of parental rights. In December, the State petitioned to terminate both parents' rights. It sought to terminate the mother's rights pursuant to Iowa Code section 232.116(1)(h) and (*l*) (2018) and the father's rights pursuant to section 232.116(1)(b), (e), and (h).

At the beginning of the termination hearing, the State requested A.L.'s case be continued to allow more time for reunification with the parents. The State explained that its position on A.L.'s case shifted due to the continuance of A.L.'s younger sibling's case. The State was willing to continue the hearing on A.L. to allow the parents time to show consistency in their progress, as both parents had been taking positive steps. The court refused to continue A.L.'s case, determining that A.L. had been out of the parents' care for approximately eighteen of the last

twenty-four months and needed permanency. Following the hearing, the juvenile court terminated the mother's and father's parental rights to A.L.[3] The mother and father separately appeal.

## II.      Standard of Review

We review termination-of-parental-rights proceedings de novo. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* (quoting *In re A.M.,* 843 N.W.2d 100, 110 (Iowa 2014)). "Our primary concern is the best interests of the child." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

"[R]eview of termination of parental rights under Iowa Code chapter 232 is a three-step analysis." *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). We must first determine if "any ground for termination under section 232.116(1) has been established." *Id.* If a "ground for termination has been established, then we determine whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 219–20. "Finally, if we do find that the statutory best-interest framework supports the termination of parental rights, we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* at 220.

---

[3] The mother's parental rights to four older children were terminated at the hearing. The court continued the termination hearing of the mother's youngest child.

### III. Analysis

A. Mother's Appeal

The mother challenges the sufficiency of the evidence supporting the statutory grounds for termination cited by the juvenile court, section 232.116(1)(h) and (*l*). "On appeal, we may affirm the juvenile court's termination order on any ground that we find supported by clear and convincing evidence." *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We choose to focus on paragraph (h), which requires the State to establish:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h). "At the present time" has been interpreted to mean "at the time of the termination hearing." *D.W.*, 791 N.W.2d at 707.

The mother does not challenge the State's establishment of the first three elements. She challenges the establishment of the fourth, claiming there was insufficient evidence presented that the child could not be returned to her custody at the time of the termination hearing. She also argues she received ineffective assistance of counsel from her attorney during the termination hearing because the attorney failed to address or correct the court's perception that the mother's nod during the court's summation of A.L.'s case was indicating her agreement with the court's summation.

"The test for ineffective assistance of counsel in termination cases is generally the same as in criminal proceedings." *In re A.R.S.*, 480 N.W.2d 888, 891 (Iowa 1992). "In order to establish an ineffective assistance claim, it must be shown that (1) counsel's performance is deficient, and (2) actual prejudice resulted." *Id.* "We presume that counsel's conduct falls within the range of reasonable professional competency," and it is the mother's burden to prove ineffective assistance. *Id.*

Near the conclusion of the hearing, the court made several findings on the record:

> [The mother] is doing well. She is making mental health therapy gains, better than she has her entire life. But I interpret her statement, which was unsolicited when she said I could not have both children in my care today. I agree that would be too much. That was a statement she was making from maintaining her mental health. And I see her nodding.

The mother claims that her nod indicated her agreement to a staggered return of the two youngest children to her care, not that she agreed she could not care for both of the children at the time of the hearing. However, immediately prior to the mother's nod, the court clarified with the mother's attorney about the mother's position and the following exchange occurred:

> [COUNSEL]: Thank you, Your Honor. [The mother] is ready to have her children returned to her care today, Your Honor. She's addressing her mental health needs and working—
> THE COURT: Well, your client just said she could not have both returned to her care today at the same time.
> [THE MOTHER]: Correct.

We find the mother has not established deficient performance as the mother's attorney did not need to address the nod or correct the court's perception when the mother herself verbally agreed with the court's statement. There is no

evidence the court misinterpreted the mother. Accordingly, the ineffective-assistance-of-counsel claim fails.

Further, while the mother argues that the court's willingness to return her youngest child to her care at a future date is evidence that A.L. should have been returned to her care at the time of the termination hearing, we do not agree. The court was not willing to return the youngest child at the time of the termination hearing because it wanted more visitation to occur before the child would be returned to ensure a positive transition. In contrast with the youngest sibling, A.L.'s case has been pending and A.L. had been out of the mother's care for a much longer period of time.

During the pendency of A.L.'s case, the mother has not been able to show sustained progress and stability when any of her children have been in her care. When the children were returned to the mother's care, her progress in treatment waned and she was unable to balance taking care of her children and her issues. While the mother has engaged in mental-health services, she did not do so consistently until a few months prior to the termination hearing. Based upon our de novo review of the record, we find sufficient evidence was presented to establish A.L. could not be returned to the mother's care at the time of the termination hearing.

The mother also contends termination of her parental rights to A.L. is not in the child's best interest. In our consideration of whether termination is in the child's best interest, "there is no all-encompassing best-interest standard." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child,

and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). "Insight for the determination of the child's long-range best interests can be gleaned from 'evidence of the parent's past performance for that performance may be indicative of the quality of the future care that parent is capable of providing.'" *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (quoting *In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981)).

The mother admitted she has not remained consistent and stable with following through with services and treatment during the pendency of this case. She recognized that she has had periods of doing well followed by periods where she struggled. We, like the district court, recognize the progress the mother has made over the pendency of this case, but the mother has not demonstrated the sustained progress that would warrant a delay in A.L.'s permanency. Throughout this case, A.L. has been in multiple placements. Given the child's young age, he needs "permanency, emotional stability and to attach as part of a family." *In re E.B.L.*, 501 N.W.2d 547, 551 (Iowa 1993). "We will not gamble with [A.L.'s] future by asking [the child] to continuously wait for a stable biological parent, particularly at such a tender age." *In re D.S.*, 806 N.W.2d 458, 474 (Iowa Ct. App. 2011). Based upon our review of the record, we find termination is in the child's best interest.[4]

---

[4] The mother's appellate brief provided the court with information outside of the closed record. We do not consider those facts that were not a part of the district court's record in reaching our conclusion. *See* Iowa R. App. P. 6.801 (the record on appeal consists of "the original documents and exhibits filed in the district court case . . . , the transcript of proceedings, if any, and a certified copy of the related docket and court calendar entries prepared by the clerk of the district court."); *In re Marriage of Keith*, 513 N.W.2d 769, 771 (Iowa Ct. App. 1994) ("[A]ny matters outside the record on appeal are disregarded.").

B.    Father's Appeal

The father likewise challenges the sufficiency of the evidence supporting the statutory grounds for termination of his parental rights under Iowa Code section 232.116(1)(b), (e), and (h).   As to paragraph (h) he only challenges the establishment of the final element—that the child could not be returned to his care at the time of the termination hearing.   He contends that A.L. could have been returned to him at the time of the termination hearing or within a reasonable amount of time.

At the time of the termination hearing, the father had just attended orientation at a new job and did not have a stable residence.  The father had "couch surfed" with his friends and, at the time of the termination hearing, he was staying at his current paramour's apartment.  The father is not listed on the lease.  The apartment has only one bedroom, and the father admitted it would be crowded since it would be the father, his paramour, and their daughter, in addition to A.L. if the child was returned to his care.  The father admitted A.L. would possibly have to sleep in the same bed with him and his paramour.  His testimony throughout the termination hearing indicated that he wanted the child returned to the mother's care—not his own.  Further, the father only completed substance-abuse treatment successfully just prior to the termination hearing.   He completed multiple substance-abuse evaluations during the pendency of this case, but his prior attempts to follow through and complete a treatment program failed.   Like the mother, the record indicates the father has a history of cycling through periods of doing well and then doing poorly; he has been unable to sustain a long period of progress.  Only a few months prior to the termination hearing did the father begin

to respond to services. "A parent cannot wait until the eve of termination, after the statutory time periods for reunification have expired, to begin to express an interest in parenting." *C.B.*, 611 N.W.2d at 495. Upon our de novo review, we find sufficient evidence to establish that the child could not be returned to the father at the time of the termination hearing.

To the extent the father questions whether termination is in the child's best interests, the father, like the mother, has not shown consistent and sustained progress in dealing with his issues. He was incarcerated multiple times throughout the pendency of this case, interrupting his ability to be a consistent presence in the child's life. Further, he only recently was able to complete a substance-abuse treatment program successfully. The father has not had stable employment and housing throughout the pendency of the case. At the time of the termination hearing, he was staying with his paramour and his daughter and the father admitted the home would be crowded if A.L. was returned to his custody. Upon our review, we find termination is in the child's best interest.

To the extent that the father is requesting additional time for reunification, section 232.104(2)(b) permits the juvenile court to continue the child's placement for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period." Upon our de novo review, we decline to delay the child's permanency any further, and we decline to grant the father an extension.

Neither parent contends that an exception to termination pursuant to section 232.116(3) warrants a different result. Therefore, we do not need to address that

step.  *See P.L.*, 778 N.W.2d at 40.  Accordingly, we affirm the termination of both parents' parental rights.

**AFFIRMED ON BOTH APPEALS.**