# IN THE COURT OF APPEALS OF IOWA

No. 19-1564
Filed November 27, 2019

**IN THE INTEREST OF J.K.,**
**Minor Child,**

**S.R., Mother,**
    Appellant,

**C.K., Father,**
    Appellant.

_____

Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

A mother and a father separately appeal the termination of their parental rights. **AFFIRMED ON BOTH APPEALS.**

Daniela Matasovic of Matasovic Law Firm, Ames, for appellant mother.

Agnes G. Warutere of Warutere Law Firm, PLLC, Ankeny, for appellant father.

Thomas J. Miller, Attorney General, and Meredith L. Lamberti, Assistant Attorney General, for appellee State.

Shannon M. Leighty, Nevada, guardian ad litem for minor child.

Considered by Bower, C.J., and May and Greer, JJ.

**BOWER, Chief Judge.**

A mother and a father separately appeal the termination of their parental rights to their child, J.K., born in December 2017. The juvenile court entered detailed findings of fact and conclusions of law, fully supported by the record, and determined termination was proper as to both parents. We affirm on both appeals.

We review termination proceedings de novo. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). We use a three-step process to review the termination of a parent's rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). First, we determine whether a ground for termination under section 232.116(1) (2019) has been established. *See id.* at 472–73. If a ground for termination has been established, then we consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473 (citation omitted). Finally, "we consider whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (citation omitted).

There must be clear and convincing evidence of a ground for termination under Iowa Code section 232.116(1) to uphold an order for termination of parental rights. *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Clear and convincing evidence means there are "no serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010) (citation omitted). When, as here, the juvenile court terminates on multiple statutory grounds, we may affirm on any ground. *See id.* at 707. The paramount concern in termination proceedings is the best interests of the child. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

In May 2018, when the child was five months old, J.K. was removed from the parents' care due to their use of methamphetamine. A hearing to review the emergency removal was held on August 6. Both parents appeared and agreed the court could exercise emergency jurisdiction. However, the child-in-need-of-assistance (CINA) adjudication hearing was continued.

J.K. was adjudicated CINA on November 1, 2018. The December 3 dispositional order found the parents had made virtually no effort to take advantage of any voluntary services or to otherwise maintain a place of importance in the child's life. The court found, "Neither parent provided any proof that they have any ability to address their own basic daily needs, let alone the needs of the child."

In its May 17, 2019 permanency order, the court noted:

> The child's father has been jailed since January 2019 with the exception of a few weeks during which he made no effort to contact the child or the Iowa DHS. He has not visited or contacted the child in several months. Since December the mother has been offered [twenty-three] visitation opportunities and has taken advantage of nine of them.
> Drug abuse by the parents was an initial concern in these proceedings. The mother failed to complete substance abuse treatment in the summer of 2018 and she now refuses drug screening. She asserts that she is making attempts to reengage with mental health services and substance abuse counseling but has done nothing more than make phone calls for appointments scheduled later this month. The father participated in a substance abuse evaluation while jailed. According to his testimony, that evaluation recommended no substance abuse treatment but did recommend mental health services. The father has reached a plea agreement in felony criminal matters pending against him in Polk County that contemplates his placement on street probation. However, sentencing is not scheduled for the father until approximately June 27. The father appears to have no particular plan for success if he is released from jail to community-based supervision.

At the time of the May 2019 permanency hearing, the parents sought an additional six months to seek reunification. The court made these findings:

> A review the last [twelve] months indicates that the parents have done virtually nothing to comply with case plan goals nor have they made any effort to establish themselves in a place of importance in the child's life. The father has been jailed for much of the proceedings. The mother's circumstances continue to be unstable. Her exact whereabouts and circumstances are often difficult to ascertain and she appears [to] bounce from residence to residence with friends. Substance abuse and mental health continue to be ongoing concerns for the parents. Neither has a stable home [or] any prospects for meeting their own needs let alone the needs of [J.K.]. The court concludes there is no reasonable prospect for reunification if the dispositional order is extended for an additional period of six months as requested by the parents.

The court ordered the filing of a petition to terminate parental rights. The petition was filed on May 30.

On June 27, after being convicted of felony eluding and possession of a controlled substance, third or subsequent offense, the father was sentenced to concurrent five-year terms of imprisonment. The sentence was suspended, and he was placed on probation subject to requirements that he obtain a mental-health evaluation and follow any treatment and medical-management recommendations, complete recommended substance-abuse and mental-health treatment, obtain full-time employment, and participate in drug testing.

The termination-of-parental-rights trial was held on August 29, 2019, and the court entered the termination order on September 5, terminating both parents' parental rights pursuant to Iowa Code section 232.116(1)(e) and (h).[1] Both parents appeal.

---

[1] Section 232.116(1) allows the juvenile court to terminate parental rights if:
    (e) The court finds that all of the following have occurred:

**I. Mother's appeal.**

The mother does not challenge the existence of the grounds to terminate and so we need not address this issue. *See P.L.*, 778 N.W.2d at 40.

The mother contends she was denied due process when the court did not grant her motion to continue, and her resulting absence from the termination hearing left her unable to confront witnesses, assist in cross-examination, or hear the evidence offered by the State and refute it.[2] The mother did not raise her due process claim below. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). As a result, she failed to preserve the issue for our review. *See In re K.C.*, 660

---

        (1) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
        (2) The child has been removed from the physical custody of the child's parents for a period of at least six consecutive months.
        (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so. . . .
        . . . .
        (h) The court finds that all of the following have occurred:
        (1) The child is three years of age or younger.
        (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
        (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
        (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

[2] Our supreme court has already determined that the Sixth Amendment, which grants those accused in criminal proceedings the right to confront witnesses against them, applies only to criminal cases. *See In re D.J.R.*, 454 N.W.2d 838, 846 (Iowa 1990) ("By its terms, the sixth amendment applies only to criminal cases. The sixth amendment does not apply to this [termination-of-parental-rights] case.").

N.W.2d 29, 38 (Iowa 2003) (finding parents waived procedural due process claim by failing to raise objection before the juvenile court, noting that "[e]ven issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal"); *see also A.B.*, 815 N.W.2d at 773.

In any event, the mother was aware in May 2019 that the termination trial was scheduled for August 29. On the morning of trial, her attorney informed the court that she had spoken with the mother the day before and the mother had said she would attend the hearing. Her attorney was present and participated in the termination hearing, cross-examined witnesses, and presented evidence on the mother's behalf. Thus, the mother was given notice and opportunity to be heard. *See In re K.M.*, 653 N.W.2d 602, 607 (Iowa 2002).

The mother argues termination should be avoided due to the mother-child bond. *See* Iowa Code § 232.116(3)(c) ("The court need not terminate the relationship between the parent and child if the court finds . . . [t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship."). The juvenile court made these findings, which we find convincing:

> The parents were offered weekly supervised visitation. They attended less than 50% of the visitation offered to them. They would frequently go long periods of time without visiting or contacting [J.K.] [The child] is described as a happy and playful child. He responds well to all adults. The parents' perception that he is bonded to them is their misperception about his outgoing personality. Their misperception is due to their lack of contact with [J.K.] When he sees them, he is playful and jovial just as he would be with any adult who shows him positive emotional reaction. The parents have not utilized frequent visitation opportunities in order to establish and maintain themselves in a place of importance in [J.K.'s] life. The chaotic lifestyle the parents exposed [J.K.] to before his removal leads the court to conclude they had little if any bond with him at the time of

removal and have made no effort to maintain or establish a healthy and permanent parent/child bond with [the child].

The evidence does not show such a close bond exists between mother and child that termination would be detrimental to the child.

Lastly, the mother maintains termination of her parental rights is not in the child's best interests. In considering the best interests of a child, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child." *Id.* at 41.

Here, termination is in the child's best interests. We defer to the juvenile court's factual findings and need not repeat them here. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000) (noting we give weight to the juvenile court's factual findings). We affirm the termination of the mother's parental rights.

**II. Father's appeal.**

The father contends he was denied his due process right to contest removal of the child and his counsel was ineffective in failing to assert that claim in juvenile court. He also asserts he was denied due process when the CINA adjudication proceeded without him being represented by counsel and that his later-appointed counsel was ineffective in failing to assert that issue. And the father contends

counsel was ineffective in failing to challenge the State's lack of reasonable efforts below.

"The test for ineffective assistance of counsel in termination cases is generally the same as in criminal proceedings." *In re A.R.S.*, 480 N.W.2d 888, 891 (Iowa 1992). "In order to establish an ineffective assistance claim, it must be shown that (1) counsel's performance is deficient, and (2) actual prejudice resulted." *Id.* "We presume that counsel's conduct falls within the range of reasonable professional competency," and it is the father's burden to prove he received ineffective assistance. *See id.*

The propriety of the removal is moot. *See In re A.M.H.*, 516 N.W.2d 867, 871 (Iowa 1994) ("Custody of the child was placed with DHS under the dispositional order. Any error committed in granting the temporary ex parte order cannot now be remedied. We cannot go back in time and restore custody based on alleged errors in the initial removal order."); *see also In re T.B.*, No. 18-0767, 2018 WL 4929737, at *4 (Iowa Ct. App. Oct. 10, 2018).

The father has not established he was prejudiced by the child being adjudicated CINA when the father was not represented by counsel. There is no likelihood of a different outcome. The father's appellate brief acknowledges "the statutory grounds for an adjudication had been met." The record fully supports a finding that the child was in need of assistance and placement in foster care was necessary.[3]

---

[3] Though the father denied he was actively using methamphetamine at the time, both parents had histories of substance-abuse issues, and the father testified at the termination trial that when the child was removed from their custody, they were without food, housing, and transportation.

The father next contends his counsel was ineffective in failing to timely raise the issue that the State had not made reasonable efforts to reunify him with J.K. This claim is based on the lack of visitation between himself and the child while the father was in jail from January to June 2019. He asserts that had counsel affirmatively requested visitation during that time, he "would have been easily integrated into the child's daily life had he been allowed contact between January and June, 2019." We disagree.

"The State must show reasonable efforts as a part of its ultimate proof the child cannot be safely returned to the care of a parent." *In re L.M.*, 904 N.W.2d 835, 839 (Iowa 2017) (citation omitted). "[W]hat constitutes reasonable services varies based upon the requirements of each individual case." *In re C.H.*, 652 N.W.2d 144, 147 (Iowa 2002).

First, we observe that even before the father was jailed, he was not visiting his child on a regular basis. He attended about half of the visits offered. We recognize he had transportation difficulties, but DHS did offer him bus passes. While in jail, the father did not put J.K. on his visitor lists at any of the facilities where he was incarcerated. We note the father testified at the termination trial, "I don't need visitors while I am in the jail really." He did not try to contact his child through his court-appointed attorney, the foster parents, or service providers. He did not notify DHS or his service provider when he was moved from one facility to another. We are not persuaded by the father's attempt to shift the responsibility for his lack of communication with his child to his counsel. *Cf. C.H.*, 652 N.W.2d at 147–48 (discussing parent's responsibilities).

Finally, the father asserts there is not clear and convincing evidence of either statutory ground for termination. Here, the child is under three years old, has been adjudicated CINA, and has been out of the parents' custody since May 2018. *See* Iowa Code § 232.116(1)(h)(1)–(3). Thus, grounds to terminate parental rights exist if "the child cannot be returned to the custody of the child's parents . . . at the present time." *Id.* § 232.116(1)(h)(4).

The father asserts the child could have been returned to him at the time of the termination trial because he was employed, had housing, and had begun mental-health treatment. We disagree.

While the father was in jail, he completed a substance-abuse evaluation that diagnosed him with a severe amphetamine dependence in remission. He has a recent conviction for possession of a controlled substance. He has just recently obtained evaluations and treatment the juvenile court had ordered a year ago. We adopt the juvenile court's findings:

> [J.K.] cannot be returned to his [father's] care at this time. While the father has shown some improvement, those improvements have only come within the past [sixty] days and have only come upon the threat of prison if he does not comply with probation. The improvements noted have more to do with the father's interest in himself than his interest in [J.K.] . . . The improvements he has made in the last [sixty] days must be weighed in contrast to his criminal history dating back to 2008, and [fifteen] months [J.K.] has been before the court. The court finds it unlikely that the father will maintain improvements sufficient to have [the child] returned to his care within the next six months given the scope of his chaotic history dating back to at least 2008.
> . . . .
> . . . In fact, [J.K.] has been removed since May 26, 2018[,] with no trial home periods and the parents' inability or unwillingess to move beyond fully and professionally supervised visitation with him. They made no effort to reunify with him and attend less than 50% of the offered visitations. . . . The father lives in an efficiency apartment with a person unknown to the Iowa DHS and despite full-

time employment, the father has provided no financial support to [J.K.]  There is clear and convincing evidence that [J.K.] cannot be returned to the custody of the child's parents as provided in Iowa Code section 232.102 at the present time.

Because the father's claims of ineffective assistance of counsel are unsupported and there is clear and convincing evidence to terminate the father's parental rights pursuant to section 232.116(1)(h), we affirm the termination of his parental rights.

**AFFIRMED ON BOTH APPEALS.**